GUERRERO, J.
*501 *835 This case involves a crime that started as an attempted robbery, and ended in the death of three individuals: the victim of the attempted robbery and two of the defendants' cohorts involved in that crime. A jury convicted defendant Steven David James Carter of one count of first degree murder and one count of attempted robbery. Defendant Michael Andre Hall pled no contest to voluntary manslaughter, robbery, and an enhancement. The defendants raise separate sentencing challenges on appeal.
Carter argues the court violated Penal Code section 654 when it sentenced him to consecutive terms for attempted robbery and first degree murder of the robbery victim.[1] Hall contends the court abused its discretion in imposing a 12-year sentence under the terms of his plea agreement. He also challenges alleged errors made during his subsequent resentencing. We agree the trial court erred in Hall's subsequent resentencing, but disagree with Carter's and Hall's remaining sentencing challenges.
After the appeal was fully briefed, we granted the parties' request to file supplemental briefing on the impact of legislative changes to the felony-murder rule under Senate Bill No. 1437 (2017-2018 Reg. Sess.). Senate Bill No. 1437 amended the murder statutes, sections 188 and 189, and enacted a new statute, section 1170.95 (Stats. 2018, ch. 1015, §§ 2-4), establishing procedures for eligible defendants to seek resentencing. We conclude Carter and Hall cannot raise their claims in this appeal; they must first petition the superior court for relief under section 1170.95.
The judgment as to Carter is affirmed.
The judgment as to Hall is affirmed as modified.
FACTUAL AND PROCEDURAL BACKGROUND
Factual Background
Carter and Hall both admitted they agreed to help Carter's cousin, Aaron A., and another person named Albert T., break into the home of Brandon P. to steal marijuana plants, although they both denied participating in the actual break-in.
*836 The attempted robbery failed, and Aaron, Albert, and Brandon all died at the scene from gunshot wounds.
Brandon lived in a "grandfather quarters" in the back of another residence. Brandon's and Albert's bodies were found inside the back residence. Aaron's body was located lying in the driveway of the front residence. Blood was smeared inside the residence, starting from the area where a stun gun was found and leading out the front door. Aaron was a major contributor for the DNA collected from the stun gun.
Multiple witnesses, including neighbors and a woman who resided in the front *502 residence, testified they heard two separate and distinct series of gunshots, although there were inconsistencies in their testimony regarding the amount of time that elapsed between the series of shots.
The People argued that the second set of gunshots came from Carter when he shot Brandon after discovering his cousin Aaron had been shot and killed.[2] One witness (Beth B.) testified Carter directed her to drop him off near Brandon's residence, and then she heard three pops in quick succession.[3] Brandon suffered three gunshot wounds, one fatal.
In his police interview, Carter admitted hearing shots, trying to drag Aaron's lifeless body from the residence, and disposing of his clothing after leaving the scene. The murder weapon was not recovered, although there was evidence Carter disposed of a handgun before leaving the scene. The phone call log from Carter's phone was erased.
A firearms expert determined two different types of firearms were used, a .380 semiautomatic and a revolver (either a .38 special or .357 magnum). Brandon was shot with either a .38-caliber or a .357-caliber revolver. Five bullets were recovered from the crime scene which were suitable for examination. Two bullets were fired using the semiautomatic firearm recovered from the scene. Bullets recovered during a search of Carter's residence matched the other type of firearm that was used in the crime (a revolver).
Carter called a friend, Benito D., to pick him and Hall up following the failed robbery (after Beth left). Carter was distraught about his cousin's death on the ride home. Carter eventually told Benito that Carter "got the guy" who killed his cousin. Benito informed the police that Carter told him he found *837 Aaron dead, then heard the victim (Brandon) in the vicinity and shot and killed him. Benito's girlfriend separately told the police that Benito told her the same thing-i.e., that Carter said he was the one who shot Brandon.
When police detectives interviewed him, Carter provided inconsistent statements regarding his involvement. Audio recordings of his interviews were played for the jury. Carter eventually admitted to serving as a lookout for $ 300, but denied any involvement in the actual shootings. At one point, he stated two masked and armed individuals who were unknown to him were involved; they told him what to do, then they told him to get rid of his clothes when they drove him home.
As part of Hall's cross-examination, the jury learned he could face a range of 85-100 years in prison for the charged crimes and firearm enhancements, but he entered into a plea agreement that allowed him to receive an eight-year sentence if he testified truthfully.
Procedural Background
The San Bernardino County District Attorney's Office charged Carter and Hall by information with three counts of murder (§ 187, subd. (a) ) for the homicides of Brandon (count 1), Albert (count 2), and Aaron (count 3), and first degree robbery (§ 211, count 5). There were various gang and firearm allegations attached to each count, including the allegation in count 1 that Carter and Hall "personally and intentionally *503 discharged a firearm, a handgun, which caused great bodily injury and death to Brandon [P.] within the meaning of Penal Code Section 12022.53(d)."
Hall withdrew his not guilty pleas pursuant to a plea agreement. He entered a plea of no contest to voluntary manslaughter of Brandon (§ 192, subd. (a) ), a lesser included offense to murder, and to second degree robbery (§ 211). He also admitted the street gang enhancement (§ 186.22, subd. (b)(1)(C) ) and a newly added enhancement for possessing a firearm in a street gang crime (§ 12021.5, subd. (a) ).[4] In a confidential addendum, the People agreed to (1) strike the 10-year gang enhancement, reducing the maximum sentence to 15 years, and (2) join the defense in recommending an eight-year term if Hall cooperated and provided truthful testimony at Carter's trial. The parties further agreed that "the trial court retain[ed] its discretion to sentence the defendant within the aforementioned sentencing range of ... three to ... fifteen years regardless of said recommendation."
*838 An amended information charged Carter with first degree murder as to Brandon, Albert, and Aaron (§ 187, subd. (a), counts 1, 2, and 3), and attempted first degree robbery (§§ 211, 664, count 4). The amended pleading retained the firearm enhancement attached to count 1 that Carter "personally and intentionally discharged a firearm," causing great bodily injury and death to Brandon ( § 12022.53, subd. (d) ).
Carter's case proceeded to jury trial the following month. The People presented two theories of first degree murder for Brandon's homicide-felony murder based on the underlying target felony of attempted robbery, and a theory of premeditation and deliberation. The jury was instructed on both theories. The trial court explained that the jury did not have to agree on a specific theory to find Carter guilty of first degree murder:
"In Count 1, the defendant is being prosecuted for murder, as I indicated before, under two separate theories: Willful, deliberate and premeditated or felony murder.
"Each theory of murder, as I explained, has different requirements. You may not find the defendant guilty of murder unless all of you agree that the People have proved that the defendant committed murder under at least one of these theories. You do not all have to agree on the same theory, but you must unanimously agree whether the murder is in the first or the second degree."
Consistent with the jury instructions, the verdict forms required the jury to agree on the degree of murder (first degree or second degree) if they returned a guilty verdict, but they were not required to agree on or specify the theory supporting their conviction.
If the jury found Carter guilty of Brandon's murder, it had to decide whether the People had proven the allegation that he personally discharged a firearm causing Brandon's death. To find the allegation true, the People had to establish: "1. The defendant personally discharged a firearm during the commission or attempted commission of that crime; [¶] 2. The defendant intended to discharge the firearm; [¶] AND [¶] 3. The defendant's act caused the death of a person who was not an accomplice to the crime."
The jury convicted Carter of first degree murder and attempted first degree robbery. The jury found the allegation that *504 Carter personally and intentionally discharged a firearm to be "not true." The court declared a mistrial on counts 2 and 3 after the jury failed to reach a verdict and subsequently granted the prosecution's request to dismiss those charges.
At sentencing, the trial court found Carter had multiple objectives in engaging in the attempted robbery and in the victim's murder. In reaching *839 this conclusion, the court found the evidence did not support Carter's claim that he merely served as a lookout for the attempted robbery. The court explained:
"[A]lthough the defendant asserts that he was just a lookout and he had no participation, personal participation, in the killing of the victim, there are some disturbing evidence that points otherwise. And I cannot resolve that statement of defendant with the evidence that I heard-getting rid of the bloody clothing; what happened to the weapon; and this story that was made up [by defendant] about two individuals-none of those matches the description of a simple person that did the lookout for other people and had no idea."
Although the court acknowledged "it appears that the jury did proceed-probably proceeded with the [f]elony [m]urder [r]ule, because they found not true as to the personal use of a firearm," the court further noted the jury's determination on the firearm use enhancement was not necessarily inconsistent with the People's theory that the murder was premeditated and deliberated. The court stated: "On the other hand, there is no way for me to read the jurors' minds, because they could clearly go with the murder rule of he personally used a weapon and killed someone; however, they had enough doubt as to-reasonable doubt as to what weapon, whose weapon, what happened to the weapon and, therefore, found it not true. It's not inconsistent, and I cannot get into the minds of the jurors."
Based on its review of the evidence presented at trial, the court ultimately concluded the "crimes and their objectives were predominantly independent of each other." The court therefore imposed a term of 25 years to life for Brandon's murder on count 1 and a three-year consecutive upper term for first degree attempted robbery on count 4, and declined to stay the punishment for attempted robbery pursuant to section 654.
Hall was sentenced after Carter. During Hall's sentencing hearing, the People moved to strike the 10-year gang enhancement in accordance with the plea agreement. Representing that Hall had testified truthfully at Carter's trial, the People joined defense counsel in recommending an eight-year sentence. The court found that Hall had testified truthfully and was therefore entitled to the benefit of his bargain. It declined, however, to accept the recommended eight-year prison term, instead imposing a 12-year sentence consisting of 11 years for voluntary manslaughter (§ 192, subd. (a) ), a concurrent two-year term for second degree robbery (§ 211), and a consecutive one-year term for the street-gang firearm enhancement (§ 12021.5, subd. (a) ).
DISCUSSION
Carter raises a section 654 challenge to his consecutive sentences for attempted robbery and first degree murder. Hall challenges the court's *840 imposition of a 12-year term at the original sentencing hearing and contends the court erred during resentencing. We address these contentions in turn before addressing the parties' arguments in supplemental briefing regarding the impact of Senate Bill No. 1437. *505 I
Carter's Section 654 Challenge
Carter claims his consecutive sentences for attempted robbery and first degree murder violate section 654. He argues that "[t]he jury's finding that it was 'not true' ... that Carter personally used a firearm to kill [Brandon] is completely inconsistent with a conviction of first degree murder on the theory of first degree, premeditated murder ...." He further argues "[b]ecause the jury found that Carter did not personally discharge a firearm at [Brandon], it follows, ipso facto , the jury also found Carter did not shoot [Brandon] with an independent criminal objective, such as vengeance." Based on these purported jury findings, Carter contends the jury necessarily determined Carter was guilty of first degree murder based solely on a felony-murder theory.[5]
We disagree with Carter's central premise that "the jury explicitly found that Carter did not shoot [Brandon]." Although the jury may have harbored reasonable doubt as to whether Carter personally used a firearm, the jury's "not true" finding was not an affirmative determination that Carter was not the shooter who murdered Brandon. Just as trial courts may rely on facts underlying verdicts of acquittal in making sentencing choices, the trial court here could rely on facts arguably rejected by the jury in returning a "not true" finding on a firearm use enhancement. Thus, the trial court could conclude that Carter was the shooter and was culpable for more than the single act of serving as a lookout for the attempted robbery. The jury's determination on the firearm use enhancement does not constrain the trial court's sentencing authority under section 654 in this case, particularly where the jury did not have to agree on any particular theory to support its first degree murder conviction.
A. Section 654
Section 654, subdivision (a), provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished *841 under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." " '[T]he purpose of section 654"is to insure that a defendant's punishment will be commensurate with his culpability." ' " ( People v. Capistrano (2014) 59 Cal.4th 830, 886, 176 Cal.Rptr.3d 27, 331 P.3d 201 ( Capistrano ), overruled on other grounds by People v. Hardy (2018) 5 Cal.5th 56, 104, 233 Cal.Rptr.3d 378, 418 P.3d 309.)
In addition to precluding multiple punishments for a single act, section 654 also precludes multiple punishments for an indivisible course of conduct. ( People v. Hester (2000) 22 Cal.4th 290, 294, 92 Cal.Rptr.2d 641, 992 P.2d 569 ( Hester ); People v. Tarris (2009) 180 Cal.App.4th 612, 626, 103 Cal.Rptr.3d 278.) " ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' " ( Capistrano , supra , 59 Cal.4th at p. 885, 176 Cal.Rptr.3d 27, 331 P.3d 201.)
Whether a defendant had multiple intents or objectives is a question of *506 fact for the sentencing court ( People v. Coleman (1989) 48 Cal.3d 112, 162, 255 Cal.Rptr. 813, 768 P.2d 32 ), and its findings will be upheld on appeal if supported by substantial evidence. ( People v. McGuire (1993) 14 Cal.App.4th 687, 698, 18 Cal.Rptr.2d 12.) "We review the trial court's determination in the light most favorable to the [People] and presume the existence of every fact the trial court could reasonably deduce from the evidence." ( People v. Jones (2002) 103 Cal.App.4th 1139, 1143, 127 Cal.Rptr.2d 319.)
B. The Trial Court Did Not Violate Section 654
Where a defendant is prosecuted solely on a theory of first degree felony murder, section 654 precludes punishment for both murder and the underlying felony. (See, e.g., People v. Hensley (2014) 59 Cal.4th 788, 828, 175 Cal.Rptr.3d 213, 330 P.3d 296 [sentence for felony underlying first degree felony murder conviction must be stayed under section 654 ].) However, if the prosecution presents alternative theories-such as premeditation and felony murder-and there is evidence supporting a finding that the murder was premeditated, then the trial court may properly impose a sentence for both the murder and the felony. ( People v. Osband (1996) 13 Cal.4th 622, 730-731, 55 Cal.Rptr.2d 26, 919 P.2d 640 [affirming decision not to stay sentence for rape and robbery under section 654, where trial court made implicit finding that crimes involved more than one objective, even though it was unclear whether murder conviction was based on felony-murder or premeditation theory].)
*842 Here, Carter's conviction for first degree murder was not based solely on the theory of felony murder. The jury was instructed on separate theories of first degree murder-premeditated and deliberated murder and felony murder-and it was further instructed on theories of both direct liability and vicarious liability (aiding and abetting the commission of a murder and conspiracy). There was substantial evidence supporting the trial court's finding that the murder was premeditated because Carter shot Brandon three times to avenge his cousin's death-including Carter's own statement that night that he "got the guy" who killed Aaron. The court reasonably could have concluded Carter's objective in attempting to rob the victim was independent of his objective in killing the victim, thereby justifying multiple punishments under section 654.
The jury did not have to make an affirmative factual finding that Carter shot Brandon to return a guilty verdict on first degree murder, and the trial court did not need such an affirmative finding by the jury to exercise its sentencing discretion under section 654. Generally, "in the absence of some circumstance 'foreclosing' its sentencing discretion ..., a trial court may base its decision under section 654 on any of the facts that are in evidence at trial, without regard to the verdicts." ( People v. McCoy (2012) 208 Cal.App.4th 1333, 1340, 146 Cal.Rptr.3d 469 ( McCoy ).) Indeed, the trial court "may even rely on facts underlying verdicts of acquittal in making sentencing choices." ( Ibid . )
Carter argues that we are presented with a situation outside the scope of the general rule, such that the trial court cannot look to all the evidence introduced at trial. "[W]here there is a basis for identifying the specific factual basis for a verdict, a trial court cannot find otherwise in applying section 654." ( McCoy , supra , 208 Cal.App.4th at p. 1339, 146 Cal.Rptr.3d 469, italics added.) But this rule has been applied where the prosecution proceeded on a single factual basis at trial, as reflected in the charging documents, jury instructions, prosecutor's arguments, or *507 verdict forms. (See People v. Siko (1988) 45 Cal.3d 820, 826, 248 Cal.Rptr. 110, 755 P.2d 294 [where both the charging document and verdicts specified the lewd conduct as consisting of two specific sex offenses, and neither the jury instructions nor the closing argument suggested any other basis for the molestation counts, the People could not advance an alternative factual basis for those convictions based on the evidence at trial]; People v. Jones (2012) 54 Cal.4th 350, 359, 142 Cal.Rptr.3d 561, 278 P.3d 821 [amended information and prosecutor's argument established defendant's convictions were based on single act for which defendant could only be punished once]; People v. Bradley (2003) 111 Cal.App.4th 765, 770, 4 Cal.Rptr.3d 166 [where the prosecutor made an election to tender a single theory of guilt under which the defendant entertained a single objective, trial court could not "countermand the jury" and make a contrary finding].) Here, there was no language in the charging *843 document or verdict forms that narrowed the court's discretion-both referred generally to a charge of first degree murder. While the prosecutor at times emphasized a felony-murder theory, evidence was presented to support both theories; the prosecutor argued both theories to the jury; the defendant likewise addressed both theories during closing arguments; and the jury was instructed on both theories. Based on this record, the court could properly consider all of the evidence presented at trial to make its sentencing decision under section 654. (See People v. Centers (1999) 73 Cal.App.4th 84, 100-101, 86 Cal.Rptr.2d 151 [for purposes of applying section 654, trial court could properly make factual finding that there were multiple victims where neither the information nor the verdicts specified a particular victim of the burglary].)
The jury's "not true" finding is not a circumstance which prevents the trial court from considering "any of the facts that are in evidence at trial, without regard to the verdicts." ( McCoy , supra , 208 Cal.App.4th at p. 1340, 146 Cal.Rptr.3d 469.) Carter contends we can discern the factual basis underlying the jury's verdict of first degree murder here because of how the jury addressed the firearm use enhancement. The dissenting opinion agrees, post , noting that "the weapon use finding ... establishes the basis for the jury's first degree murder verdict." Because the jury returned a "not true" finding, Carter reasons, the jury necessarily convicted Carter of first degree murder based solely on a felony-murder theory-thereby foreclosing a sentence for both murder and attempted robbery. But the jury did not have to agree on any theory at all-it only had to agree whether the crime was first degree or second degree murder. We also believe Carter's proposed approach attempts to read too much into the jury's determination and thought processes. The jury's finding on the gun enhancement might have been no more than the product of compromise, mistake, or lenity. (See People v. Lewis (2001) 25 Cal.4th 610, 656, 106 Cal.Rptr.2d 629, 22 P.3d 392 ["An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict."]; People v. Miranda (2011) 192 Cal.App.4th 398, 405, 121 Cal.Rptr.3d 231 ( Miranda ) ["[U]nder the inconsistent verdict doctrine, the 'not true' finding on the personal use enhancements does not inexorably lead to a finding that defendant was not the direct perpetrator of the substantive offenses."].)
Although these descriptions of a jury's actions arise in different contexts, such as where a jury returns inconsistent verdicts and we review the sufficiency of the evidence, the same logic applies when a trial court considers whether to stay a *508 sentence pursuant to section 654. Just as "inconsistent verdicts are allowed to stand if the verdicts are otherwise supported by substantial evidence" ( Miranda , supra , 192 Cal.App.4th at p. 405, 121 Cal.Rptr.3d 231 ), the trial court's sentencing determination should be allowed to stand based on the record before us irrespective of the jury's "not true" finding on the firearm use enhancement. *844 But even if we interpret the jury's verdicts as reflecting a conclusion that reasonable doubt precluded Carter's conviction of first degree murder on a theory of premeditation and deliberation, the trial court was still free to make its own determination under section 654 based on the evidence presented at trial. As the People correctly note, the applicability of section 654 is a factual question for the judge, not the jury. Section 654 is a "statute[ ] that mitigate[s] punishment." ( McCoy , supra , 208 Cal.App.4th at p. 1339, fn. 6, 146 Cal.Rptr.3d 469.) The judge is not "mak[ing] factual findings that conflict with the jury's conclusion" where, as here, the jury has been properly presented with multiple theories of first degree murder, the jury has convicted the defendant on a general charge of first degree murder, and the judge then applies a preponderance of the evidence standard to determine what specific role the defendant played in that murder. (See People v. Towne (2008) 44 Cal.4th 63, 87, 78 Cal.Rptr.3d 530, 186 P.3d 10 ( Towne ) ["the trial court's consideration of conduct underlying counts of which the defendant has been acquitted is not inconsistent with the jury's verdict of acquittal, because a lower standard of proof applies at sentencing"]; People v. Lewis (1991) 229 Cal.App.3d 259, 264, 280 Cal.Rptr. 128 [because "[c]ircumstances on which a trial court relies in making a sentencing choice must be established by a preponderance of the evidence," trial court could find defendant used weapon in commission of rape even though jury found that weapon use allegation not true].)
Even if the jury was not merely exercising lenity or striking a compromise here, at most the "not true" finding shows it harbored reasonable doubt about Carter's role-it does not show he was not the shooter. ( People v. Santamaria (1994) 8 Cal.4th 903, 922, 35 Cal.Rptr.2d 624, 884 P.2d 81 ["[T]he jury's not true finding on the enhancement allegation does not mean defendant did not use the knife, only that there was a reasonable doubt that he did."]; People v. Thompson (2010) 49 Cal.4th 79, 119-120, 109 Cal.Rptr.3d 549, 231 P.3d 289 [jury's not true finding on a personal firearm use enhancement allegation did not necessarily mean jury based its murder verdict on a finding that defendant was an aider and abettor rather than the shooter; the jury may have been uncertain as to the exact role he played].)[6]
The trial court is not making an inconsistent finding here-the trial court is taking the jury's conviction on the first degree murder count and determining for sentencing purposes, under the lower standard of preponderance of the evidence, whether Carter harbored multiple criminal intents and objectives in *845 attempting to rob and then murder the victim. There is no dispute that there was sufficient evidence *509 to establish Carter shot the victim. We merely have a difference of opinion on whether the "not true" finding on the firearm use enhancement should be treated as an affirmative determination by the jury that forecloses the trial court's ability to impose multiple punishments under section 654.
We disagree with the dissenting opinion that the trial court's determination under section 654 violates the constitutional guarantees of either the Fifth or Sixth Amendments under the circumstances here. As to the Fifth Amendment, "the United States Supreme Court has held that the double jeopardy clause does not preclude a trial judge from considering, at sentencing, conduct underlying a charge of which the defendant was acquitted. [Citation.] The high court reasoned that an acquittal merely establishes the existence of a reasonable doubt as to guilt. Unless specific findings are made, 'the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict ....' [Citation.] Facts relevant to sentencing need be proved only by a preponderance of the evidence, and ' "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." ' " ( Towne , supra , 44 Cal.4th at p. 86, 78 Cal.Rptr.3d 530, 186 P.3d 10 ; accord, In re Coley (2012) 55 Cal.4th 524, 557, 146 Cal.Rptr.3d 382, 283 P.3d 1252.) The same reasoning applies here, where the jury has made a "not true" finding that was essentially an acquittal of the firearm enhancement based on the instructions given to the jury. The dissenting opinion characterizes the trial court's sentencing determination as "inconsistent" with the jury's verdict, but we disagree with that characterization. A jury's finding that the prosecution has not proved a given fact beyond a reasonable doubt is not inconsistent with the trial court's finding that the prosecution did prove the same fact by a preponderance of the evidence. (See Coley , at p. 557, 146 Cal.Rptr.3d 382, 283 P.3d 1252 ; Towne , at p. 86, 78 Cal.Rptr.3d 530, 186 P.3d 10.)
Similarly, it is well-settled that the Sixth Amendment right to a jury trial does not apply to trial court findings under section 654. (See, e.g., People v. Deegan (2016) 247 Cal.App.4th 532, 547-550, 202 Cal.Rptr.3d 204 ( Deegan ); People v. Solis (2001) 90 Cal.App.4th 1002, 1021-1022, 109 Cal.Rptr.2d 464 ( Solis ).) The Sixth Amendment requires a jury to find beyond a reasonable doubt "all facts legally essential to [a defendant's] punishment" ( Blakely v. Washington (2004) 542 U.S. 296, 313, 124 S.Ct. 2531, 159 L.Ed.2d 403 ), and that is precisely what occurred here. The jury found beyond a reasonable doubt that Carter had committed first degree murder and attempted first degree robbery. These findings exposed Carter to a maximum sentence of 25 years to life in prison for his murder conviction (§ 190, subd. (a) ) and three years in prison for his attempted robbery conviction (§§ 213, subd, (a)(1)(B), 664, subd. (a) ). The trial court could *846 therefore impose that sentence without running afoul of the Sixth Amendment. (See People v. Cleveland (2001) 87 Cal.App.4th 263, 270-271, 104 Cal.Rptr.2d 641 ; see also Ring v. Arizona (2002) 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 ; People v. Black (2007) 41 Cal.4th 799, 813, 62 Cal.Rptr.3d 569, 161 P.3d 1130.)
Although the trial court was called upon to make additional factual findings to determine whether to apply section 654, these additional findings do not violate the Sixth Amendment. " 'The question of whether section 654 operates to "stay" a particular sentence does not involve the determination of any fact that could increase *510 the penalty for a crime beyond the prescribed statutory maximum for the underlying crime. ...' [Citation.] ... '[S]ection 654 is not a sentencing "enhancement." On the contrary, it is a sentencing "reduction" statute. Section 654 is not a mandate of constitutional law. Instead, it is a discretionary benefit provided by the Legislature to apply in those limited situations where one's culpability is less than the statutory penalty for one's crimes. Thus, when section 654 is found to apply, it effectively "reduces" the total sentence otherwise authorized by the jury's verdict. The [Sixth Amendment prohibition on judicial factfinding], however, only applies where the nonjury factual determination increases the maximum penalty beyond the statutory range authorized by the jury's verdict.' " ( Solis , supra , 90 Cal.App.4th at pp. 1021-1022, 109 Cal.Rptr.2d 464 ; see Deegan, supra , 247 Cal.App.4th at p. 547, 202 Cal.Rptr.3d 204 ; see also In re Varnell (2003) 30 Cal.4th 1132, 1142, 135 Cal.Rptr.2d 619, 70 P.3d 1037 [citing Solis with approval].) As the United States Supreme Court explained, in an analogous context, " '[J]udges in this country have long exercised discretion of this nature in imposing sentence within [established ] limits in the individual case,' and the exercise of such discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts." ( Dillon v. U.S. (2010) 560 U.S. 817, 828-829, 130 S.Ct. 2683, 177 L.Ed.2d 271 ; accord, Alleyne v. U.S. (2013) 570 U.S. 99, 116-117, 133 S.Ct. 2151, 186 L.Ed.2d 314.)
In summary, we conclude the jury's "not true" finding as to the firearm use enhancement is not an affirmative finding that Carter was not the shooter, and it does not foreclose the trial court's discretion under section 654 to find that Carter did in fact shoot Brandon for purposes of sentencing. Based on the circumstances of this case-where multiple theories were presented to support a first degree murder conviction, the jury was not required to unanimously agree on any particular theory, and substantial evidence supports the court's sentencing determination that Carter shot Brandon with premeditation and deliberation-the trial court could properly find that Carter harbored multiple criminal intents and objectives in attempting to rob and then murder the victim. The trial court therefore did not err when it imposed a consecutive three-year sentence for Carter's attempted robbery conviction.
*847 II-III**
DISPOSITION
The judgment as to Carter is affirmed.
The judgment as to Hall is modified to strike the term imposed on the street-gang firearm enhancement ( Pen. Code, § 12021.5, subd. (a) ). As modified, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment as to Hall that (1) strikes the eight-month term for the street-gang firearm enhancement, and (2) indicates that the 11-year term for voluntary manslaughter (count 1) reflects the upper term. A certified copy of the amended abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.
I CONCUR:
IRION, Acting P. J.

Further statutory references are to the Penal Code unless otherwise indicated.

The victim, Brandon, was described as being an "excellent marksman" and had weapons in his home.

Hall testified that he saw Carter after hearing both sets of gunshots, and Carter directed Beth to drop him off near Brandon's residence after that point. Hall then saw Carter go to the driveway and around the back of the residence; by the time Carter returned, Beth had left.

The People amended the information to add the enhancement under section 12021.5, subdivision (a) when Hall submitted his change of plea. Defense counsel stated for the record: "we're picking that charge because that gives us the number [of years] we're looking for."

Indeed, Carter contends it is "nearly certain" the jurors did not even reach the issue of premeditation and deliberation, opting instead to address felony murder first and rely only on Carter's confession to aiding and abetting the attempted robbery.

A jury's finding on a special circumstance allegation is distinguishable. (See People v. Berryman (1993) 6 Cal.4th 1048, 1086, 25 Cal.Rptr.2d 867, 864 P.2d 40 [involving special circumstance allegation of felony murder in the course of a rape; "jury's first degree murder and rape verdicts and its felony-murder-rape special-circumstance finding ... under the instructions actually given, necessarily entail a unanimous determination of felony-murder-rape beyond a reasonable doubt"], overruled on other grounds by People v. Hill (1998) 17 Cal.4th 800, 823, 72 Cal.Rptr.2d 656, 952 P.2d 673.)

See footnote *, ante .