Filed 7/19/21  P. v. Carter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D078340 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FWV1202970) |
| STEVEN CARTER, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Bernardino County, Shahla S. Sabet, Judge.  (Retired judge of the San Bernardino Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Reversed and remanded with directions.

Melissa Hill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Lynne M. McGinnis, and Christine L. Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

In 2016, a jury convicted Steven Carter of one count of first degree murder (Pen. Code,[1] §§ 187 and 189) and one count of attempted home-invasion robbery (§§ 664/211, 211.5, subd. (a)). The jury found an alleged enhancement for personal discharge of a firearm causing death or great bodily injury (§ 12022.53, sub.(d)) to be not true. Carter was sentenced to an indeterminate term of 25 years to life for murder plus three years for the attempted robbery.

Carter appealed and this court affirmed the judgment in a published opinion. (*People v. Carter* (2019) 34 Cal.App.5th 831.)

In 2020, Carter filed a pro. per. form petition for resentencing pursuant to section 1170.95 (Senate Bill No. 1437). The court appointed counsel, received briefing, and held a hearing. The court reviewed the record of conviction and this court's prior opinion. The court concluded there was substantial evidence in the record to support a finding he was the actual killer and was therefore ineligible for relief under section 1170.95.

Carter timely appealed the denial of his petition.

Carter contends, and the Attorney General agrees, that the trial court erred in conducting factfinding to determine eligibility for relief without first issuing an order to show cause (OSC) and conducting an evidentiary hearing. After reviewing the record, we conclude the parties are correct. The trial court did engage in finding and weighing facts without first issuing an OSC as required by statute. Accordingly, we will reverse the denial of the petition for resentencing and remand for further proceedings.

---

[1] All further statutory references are to the Penal Code.

STATEMENT OF FACTS

We will include the facts of the offenses as set forth in our prior opinion.

"Carter and [Michael H.] both admitted they agreed to help Carter's cousin, Aaron A., and another person named Albert T., break into the home of Brandon P. to steal marijuana plants, although they both denied participating in the actual break-in. The attempted robbery failed, and Aaron, Albert, and Brandon all died at the scene from gunshot wounds.

"Brandon lived in a 'grandfather quarters' in the back of another residence. Brandon's and Albert's bodies were found inside the back residence. Aaron's body was located lying in the driveway of the front residence. Blood was smeared inside the residence, starting from the area where a stun gun was found and leading out the front door. Aaron was a major contributor for the DNA collected from the stun gun.

"Multiple witnesses, including neighbors and a woman who resided in the front residence, testified they heard two separate and distinct series of gunshots, although there were inconsistencies in their testimony regarding the amount of time that elapsed between the series of shots.

"The People argued that the second set of gunshots came from Carter when he shot Brandon after discovering his cousin Aaron had been shot and killed. One witness (Beth B.) testified Carter directed her to drop him off near Brandon's residence, and then she heard three pops in quick succession. Brandon suffered three gunshot wounds, one fatal.

"In his police interview, Carter admitted hearing shots, trying to drag Aaron's lifeless body from the residence, and disposing of his clothing after leaving the scene. The murder weapon was not recovered, although there

3

was evidence Carter disposed of a handgun before leaving the scene. The phone call log from Carter's phone was erased.

"A firearms expert determined two different types of firearms were used, a .380 semiautomatic and a revolver (either a .38 special or .357 magnum). Brandon was shot with either a .38-caliber or a .357-caliber revolver. Five bullets were recovered from the crime scene which were suitable for examination. Two bullets were fired using the semiautomatic firearm recovered from the scene. Bullets recovered during a search of Carter's residence matched the other type of firearm that was used in the crime (a revolver).

"Carter called a friend, Benito D., to pick him and [Michael] up following the failed robbery (after Beth left). Carter was distraught about his cousin's death on the ride home. Carter eventually told Benito that Carter 'got the guy' who killed his cousin. Benito informed the police that Carter told him he found Aaron dead, then heard the victim (Brandon) in the vicinity and shot and killed him. Benito's girlfriend separately told the police that Benito told her the same thing—i.e., that Carter said he was the one who shot Brandon.

"When police detectives interviewed him, Carter provided inconsistent statements regarding his involvement. Audio recordings of his interviews were played for the jury. Carter eventually admitted to serving as a lookout for $300, but denied any involvement in the actual shootings. At one point, he stated two masked and armed individuals who were unknown to him were involved; they told him what to do, then they told him to get rid of his clothes when they drove him home.

"As part of Hall's cross-examination, the jury learned he could face a range of 85 to 100 years in prison for the charged crimes and firearm

4

enhancements, but he entered into a plea agreement that allowed him to receive an eight-year sentence if he testified truthfully." (*People v. Carter*, *supra*, 34 Cal.App.5th at pp. 835-837.)

## DISCUSSION

Carter contends the trial court engaged in improper factfinding at the prima facie stage of analysis without issuing an OSC and holding an evidentiary hearing. The Attorney General concedes the trial court erred in denying the petition for resentencing at this preliminary stage. After reviewing the record, we agree with the analysis of both parties and will accept the Attorney General's concession.

Section 1170.95, subdivision (c) provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

At the prima facie analysis stage, the trial court may not engage in factfinding. However, the court can consider readily available facts, without weighing evidence or making credibility findings. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 982.) If the court's review of the record of conviction, without factfinding, demonstrates the petitioner is not eligible for relief under the statute, the court may deny the petition without issuing an OSC . (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329, review granted Mar. 18, 2020, S260493.)

5

In this case, the jury was instructed on felony murder and premeditated murder. They found the personal discharge of a firearm allegation not true. Thus, we cannot tell from the present record what theory of liability was used by the jury. As the parties agree, an evidentiary hearing is required to resolve Carter's claims.

The case must be remanded.

DISPOSITION

The order denying Carter's petition for resentencing under section 1170.95 is reversed. The case is remanded to the Superior Court with directions to issue an OSC and conduct an evidentiary hearing as required by section 1170.95.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

6