Filed 12/7/23  P. v. Cosgrove CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C097921 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FECOD-2020-0006275) |
| v. | |
| SHAWNDELL DAWNINE COSGROVE, | |
| Defendant and Appellant. | |

During a police raid, law enforcement discovered a gambling operation in defendant Shawndell Dawnine Cosgrove's garage.  A jury found defendant guilty of holding gambling stakes and permitting a space to be occupied for illegal betting.  The trial court sentenced defendant to two concurrent terms of 16 months.  On appeal, defendant's only contention is that the trial court erred in not staying one of the terms in

1

violation of Penal Code section 654.[1] We agree and will modify the judgment to stay the term imposed on count 1.

## BACKGROUND

The prosecution charged defendant with holding gambling stakes (§ 337a, subd. (a)(3)—count 1); permitting a space to be occupied for illegal betting (§ 337a, subd. (a)(5)—count 2); two counts of possessing a slot machine (§ 330a, subd. (a)—counts 3-4); and maintaining a public nuisance. (§ 372—count 5.)

*The Prosecution Case*

On July 1, 2020, the SWAT team for the San Joaquin County Sheriff's Office conducted an operation at defendant's house. Law enforcement encountered defendant in the residence. There was a garage attached to the residence, but the entrance from the garage into the residence had been boarded up or sealed with drywall. There was a separate entry door on the other side of the garage.

In the garage, law enforcement encountered 10 to 12 people. Law enforcement found what is "commonly referred to as a fish game," an illegal gambling device which is played for money. They found a "makeshift desk with six individual computer stations" and a flat screen television monitor on the wall. In a second room in the garage, they found two more flat screen monitors with hard drives, computer mouses, and keyboards as well as two laptops. A review of the history for one of the computer stations showed it had repeatedly accessed online gambling provider Web sites.

Officers also found what law enforcement refer to as a "cashier's office" in the garage. In the office, there was a monitor with a built-in hard drive, a monitor connected to a surveillance system, and a desk with a drawer. Law enforcement found a black bag

---

[1] Undesignated statutory references are to the Penal Code.

or backpack containing $851.50 in cash and a water jug that also contained money. Officers found $1,377 in cash in the fish game and $225 in a wall safe in the residence.

One sign inside the garage referred to "Queenie's house." Another referred to "Q." Two officers testified defendant answered to the name "Queenie."

In surveillance video seized by law enforcement, defendant could be seen in the garage every day from June 17, 2020, through June 30, 2020, with the possible exception of June 21. Detective Allison Barsetti testified defendant "was seen every day within the garage." In the videos, defendant can be seen playing the fish game, interacting with other individuals, and dancing. Barsetti specifically testified that in one of the surveillance videos from June 19, 2020, defendant appeared to be happy.

Officers arrested defendant and Robert Thomas for running a gambling establishment. Officers obtained the black bag or backpack containing cash from Thomas. Thomas can be seen on the surveillance video in possession of the bag. The parties stipulated that Thomas pleaded no contest to one count of holding gambling stakes. (§ 337a, subd. (a)(3).)

*The Defense Case*

Defendant testified she converted her garage into space to rent out for storage for extra income. In late February 2020, she rented the garage to Larry Calles for $200 per month. In March or April 2020, defendant found out "they were running a casino back there." She argued with Thomas and another man. They threatened her, stating they would burn her house down and kill her and her family if she called the police. Defendant turned off the power to the garage, but when the man who had been with Thomas came out of the garage with a gun in his belt and threatened to shoot her and her son, she restored power to the garage. The men's threats dissuaded defendant from contacting the police. Defendant attempted to evict Calles and the people in the garage by posting notices on the garage door. However, they did not leave.

Defendant testified she appeared in the surveillance videos because she was in the garage "investigating," and "trying to find out who the boss man was, who the owner of the place was." People in the garage told her, "[I]if you're sitting there you can't be there," so she felt she "had to play or go." She also danced as part of her act in an effort to fit in. However, she did not find out who ran the business until after the raid, when she learned the person running the gambling operation had died of a heart attack.

*Verdicts and Sentence*

The jury found defendant guilty of holding gambling stakes on count 1 and permitting a space to be occupied for illegal betting on count 2, but were deadlocked on the remaining counts. The trial court granted the prosecutor's motion to dismiss counts 3 through 5.

The trial court sentenced defendant to the low term of 16 months on count 2, which it denominated the "principal term," and to a concurrent low term of 16 months on count 1.

DISCUSSION

Defendant asserts her sentence violates section 654's prohibition of multiple punishments. According to defendant, the two sentences were imposed based upon the same conduct, allowing her garage to be used for illegal gambling. Defendant contends: "No evidence supports the conclusion that her aiding and abetting of holding gambling stakes (by permitting her garage to be used) and maintaining gambling premises (by permitting her garage to be used) are incident to more than one objective. Rather, the conduct for which she was convicted was an indivisible course of conduct." Therefore, according to defendant, one of the two sentences must be stayed.

The People respond that defendant permitted gambling in the garage over at least 13 days, and therefore there was substantial evidence based on which the trial court could find that defendant's "actions were sufficiently divisible in time to constitute separate courses of conduct." The People assert that substantial evidence supports the trial court's

4

implied finding that the two offenses were temporally separated and thus not part of the same course of conduct.

We conclude that defendant has the better argument.

Section 654 provides, in part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Thus, "[s]ection 654 precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

" 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Correa* (2012) 54 Cal.4th 331, 336.) "Whether a defendant had multiple intents or objectives is a question of fact for the sentencing court . . . ." (*People v. Carter* (2019) 34 Cal.App.5th 831, 841.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.) " 'We review the trial court's determination in the light most favorable to the [People] and presume the existence of every fact the trial court could reasonably deduce from the evidence.' " (*Carter, supra*, at p. 841.)

As defendant emphasizes, at trial, the prosecutor argued she was guilty on count 1 of holding gambling stakes (§ 337a, subd. (a)(3)), not directly, but as an aider and abettor. Under this theory, as instructed by the trial court, the prosecution had to prove that a perpetrator held money or something of value, and that the perpetrator knew the money or thing of value was given as a bet. (CALCRIM No. 2993.) As for defendant as an aider and abettor, the prosecution had to prove she knew the perpetrator intended to commit the crime; before or during the crime she intended to aid and abet the perpetrator

5

in committing the crime; and defendant's words or conduct did aid and abet the perpetrator's commission of the crime. (CALCRIM No. 401.)

As for count 2, the theory of liability was direct. The prosecution alleged defendant permitted a gambling operation to be run out of her garage. This required the prosecution to prove defendant "occupied a place"; she allowed the place to be used for "bookmaking, recording or registering bets, or receiving, holding, or forwarding bets"; and she knew the place was being used for that purpose. (CALCRIM No. 2995.)

We conclude substantial evidence does not support the trial court's implicit conclusion that the two crimes were separate and involved separate objectives. In the case of count 2, defendant's objective was to permit her garage to be used for recording, registering, receiving, or holding bets. Her objective as to count 1, as an aider and abettor, essentially was that she knew someone in the gambling operation intended to take money as bets, she intended to aid and abet the perpetrator in doing so, and her words or conduct aided and abetted the perpetrator's commission of the crime. In other words, her objective was to aid and abet in having bets taken in her garage. In our view, defendant's actions in aiding and abetting holding gambling stakes and in permitting her garage to be occupied for illegal betting " 'were merely incidental to, or were the means of accomplishing or facilitating one objective.' " (*People v. Bui* (2011) 192 Cal.App.4th 1002, 1015; accord, *People v. Harrison* (1989) 48 Cal.3d 321, 335.) Specifically, defendant's one objective was permitting and facilitating illegal betting in her garage.

We disagree with the People's position that, because the crimes occurred over many days, they were divisible in time such that they may support multiple punishment. " '[A] course of conduct *divisible in time*, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Cruz* (2020) 46 Cal.App.5th 715, 738, quoting *People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one,

6

thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)

It is true that the evidence, specifically the surveillance video, establishes defendant engaged in various activities in the garage on no fewer than 13 days between June 17, 2020, and June 30, 2020. However, as stated, we conclude that, at all times, the crimes " 'were merely incidental to, or were the means of accomplishing or facilitating one objective.' " (*People v. Bui, supra*, 192 Cal.App.4th at p. 1015.) We do not find persuasive the argument implicitly advanced by the People that defendant is subject to punishment for holding betting stakes as an aider and abettor on one day, and for permitting her garage to be occupied for illegal betting on another based on the same conduct in service of the same objective.

The purpose of section 654 " ' "is to insure that a defendant's punishment will be commensurate with . . . culpability." ' " (*People v. Capistrano* (2014) 59 Cal.4th 830, 886, overruled on another ground in *People v. Hardy* (2018) 5 Cal.5th 56, 104.) Multiple punishments here would not be commensurate with defendant's culpability.

Lastly, we address our remedy. Previously, section 654 required sentencing courts to impose the punishment that provided for the longest potential term of imprisonment. (§ 654, former subd. (a).) Assembly Bill No. 518 (2021-2022 Reg. Sess.) amended section 654 to authorize trial courts to exercise their discretion in choosing the count for which punishment will be imposed and stayed. (§ 654, subd. (a), as amended by Stats. 2021, ch. 441, § 1.) Since that enactment, when we have determined a trial court should have stayed execution of a term imposed, we typically have remanded to the trial court for a full resentencing to afford the trial court the opportunity to select the sentence to be stayed. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.) Here, however, to do so would be futile. The trial court imposed identical concurrent low terms of 16 months on each of the two counts. At a resentencing, the trial court could not impose a sentence exceeding that which it originally imposed. (*People v. Henderson* (2022) 14 Cal.5th 34,

56 [because a defendant should not be required to risk greater punishment for exercising the right to appeal, the court on remand may not impose an aggregate sentence greater than that initially imposed]; *People v. Butler* (2023) 89 Cal.App.5th 953, 962 [sentence imposed on full resentencing may not exceed original aggregate sentence].) Thus, the court could only impose the low terms on both counts and, based on our determination on this appeal, stay one of those terms. In light of the court's reference to count 2 as the "principal term" (see § 1170.1 [discussing the imposition of principal term and subordinate terms where a defendant is convicted of two or more felonies and *consecutive* terms are imposed]), we will modify the judgment to reflect that the 16-month term imposed on count 1 is stayed pursuant to section 654.

DISPOSITION

The oral pronouncement of judgment is modified to reflect that the 16-month low-term sentence imposed on count 1 is stayed pursuant to section 654.  As so modified, the judgment is affirmed.  The trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


_____\\s\\_____,
                                    Krause, J.



We concur:



_____\\s\\_____,
Robie, Acting P. J.



_____\\s\\_____,
Boulware Eurie, J.

9