Filed 3/7/24  P. v. Guillen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EDGAR CHAVEZ GUILLEN,<br><br>    Defendant and Appellant. | G062522<br><br>(Super. Ct. No. BAF2200174)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge.  Affirmed with directions.

Vanessa Place for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Robin Urbanski, Supervising Deputy Attorney General, and Brendon W. Marshall, Deputy Attorney General, for Plaintiff and Respondent.

Appellant Edgar Chavez Guillen was convicted of violating a domestic violence restraining order. As part of his sentence, Guillen was placed on probation for three years with a variety of conditions, including a search condition that subjected Guillen, his residence, and his possessions to search by law enforcement officers at any time, with or without probable cause (warrantless search condition). The trial court also issued a domestic violence criminal protective order (Protective Order), ordering Guillen to stay away from the victim, LSG, for 10 years.

Guillen appeals the warrantless search condition of his probation, as well as the stay-away provision in the Protective Order. We affirm both. We note, however, the Protective Order includes a checked box indicating the stay-away term was entered pursuant to Penal Code section 1203.097, although the trial court's sentencing minute order specifically stated the court was entering the stay-away order under Penal Code section 136.2. [1] Accordingly, the matter is remanded for the trial court to correct the clerical error on the Protective Order.

## FACTS

Guillen and LSG met in 1993. They were together from 1993 until 2021 and had three daughters. LSG reported that on October 17, 2021, Guillen became upset when she came home late from a trip out of town. She said he pulled her into their house through the front door, pushed her twice with his hands around her neck, and told her: "From here, you don't leave alive. You leave dead." She alleged he put a screw and nails in the back door to the house so she could not leave. One of LSG's daughters, who was outside the house while this was taking place, called the police, who arrived during the dispute. LSG left with her daughter and went to a hotel.

Two days later, LSG filed for a restraining order. The requested restraining order was issued on November 4, 2021. The order directed Guillen to have no contact

---

[1] All statutory references are to the Penal Code.

with LSG and to stay at least 100 yards away from the house where he had lived with LSG.

After the restraining order was issued, Guillen allegedly violated it several times. The first alleged violation arose out of an incident on November 26, 2021, when LSG arrived at her house to find Guillen parked across the street. He called out to LSG, who did not respond but went immediately into her house. Guillen walked to the door of the house and knocked, and LSG heard Guillen say he had something for her to sign. She understood he was referring to some paperwork she needed to sign related to a car accident. After Guillen left, LSG contacted the police to report that Guillen had been outside of her house.

LSG alleged Guillen again violated the restraining order on January 5, 2021, while LSG was in Los Angeles. LSG said she drove to Los Angeles to meet a mechanic who was going to check her car to see if Guillen had installed a tracking device on it. While she was parked on a street waiting for the mechanic to arrive, she said Guillen drove up behind her, parked, got out of his car, and tried to open her car door. LSG called the police, and Guillen reportedly left as the police arrived.

LSG reported another alleged violation of the restraining order on January 14, 2022. LSG told the police she was driving home when she saw Guillen driving on the road. She said Guillen drove his car toward her car to hit it, but she swerved to avoid his car and then drove home. According to LSG, when she arrived home, Guillen drove by her house and said: "I'm going to kill you." The police searched the area but were unable to find Guillen.

The police were called about another alleged violation of the restraining order on February 1, 2022. ES, an acquaintance of LSG, was driving LSG's mother to LSG's home just after midnight on February 1, 2022. When ES parked in front of the house to let LSG's mother out of the car, a car drove past ES's vehicle and then backed up. A man got out of the car and approached ES's car. ES identified the man as Guillen.

3

ES testified Guillen approached the car with his right hand behind his back towards his waist area, holding something she believed was some kind of weapon. ES was unable to identify what kind of a weapon Guillen was carrying, other than to say a portion of it was black. Guillen put his hand down to his side as he approached ES's car. She rolled down the window to speak with him and he put his head in the window. After ES explained she was bringing LSG's mother home from work, Guillen turned away, got in his car, and drove away.

Guillen was charged with nine criminal counts. Based on the original October 17, 2021 alleged domestic violence incident, he was charged with false imprisonment (§ 236; count 1), criminal threats (§ 422; count 2), and spousal battery (§ 243, subd. (e)(1); count 3). Based on the subsequent alleged incidents, he also was charged with three violations of a court order (§ 273.6, subd. (a); counts 4-6), stalking (§ 646.9; subd. (a); count 7), assault with a firearm (§ 245, subd. (a)(2); count 8), and brandishing a firearm (§ 417, subd. (a)(1); count 9).

After a jury trial, Guillen was found guilty only on count 4, relating to the incident in which he went to LSG's house to get her signature on some papers. He was found not guilty on the remaining charges. Based on the count 4 misdemeanor conviction, Guillen was sentenced to probation for a period of 36 months on the following conditions: (1) obedience to all laws, ordinances, and court orders; (2) commitment to the custody of the Riverside County Sheriff for 184 days, with a total of 184 days' credit; (3) performance of 20 hours of community service; (4) submission to immediate search, "with or without cause," by probation or law enforcement officers, including searches of his person and property, including all residences, premises, storage units, containers, and vehicles under his control; and (5) completion of a 52-week domestic violence program. In addition, Guillen was ordered not to own, purchase, receive, possess, or have any firearms, ammunitions, and ammunition feeding devices.

4

During Guillen's sentencing hearing, the trial court stated it would issue a protective order prohibiting Guillen from having any contact with LSG for 10 years. Although the court did not specifically cite section 136.2 at the hearing, its ruling recited the language of that statute, and the court's sentencing minute order specifically referenced section 136.2 as the statutory basis of the stay-away order. The Protective Order as entered, however, did not check the box indicating the stay-away order was entered pursuant to section 136.2; the box that was checked states the stay-away order was entered under section 1203.097.

## DISCUSSION

Guillen appeals two aspects of his sentence. First, he appeals the warrantless search condition, arguing it was an abuse of discretion because it bears no relationship either to the crime of which he was convicted or to the possibility of future criminality. Second, Guillen appeals the Protective Order term that prohibits him from having any contact with LSG for 10 years. He argues the 10-year stay-away term is an abuse of discretion because it extends beyond the 36-month period of probation.

## I.
### THE COURT DID NOT ABUSE ITS DISCRETION BY IMPOSING THE WARRANTLESS SEARCH CONDITION

A trial court "has broad discretion to fashion conditions of probation." (*People v. Bryant* (2021) 11 Cal.5th 976, 984.) The court may impose any condition it determines is "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . ." (§ 1203.1, subd. (j).)

Although broad, the trial court's discretion is not limitless. A condition of probation is invalid if it "'(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids

5

conduct which is not reasonably related to future criminality.'" (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).) The *Lent* test "is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

Guillen argues the warrantless search condition satisfies all three prongs of the *Lent* test and is therefore invalid. He is correct as to the first and second prongs. Guillen was convicted of violating a domestic violence restraining order by driving to the home where LSG lived, calling out to her, and knocking on her door. That incident did not involve drugs, weapons, or any conduct to which a search condition could be said to be reasonably related. The warrantless search condition "'has no relationship to the crime'" of which Guillen was convicted and thus meets the first prong. (*Lent, supra*, 15 Cal.3d at p. 486.) Further, the warrantless search condition relates to conduct that is not itself criminal, *e.g.,* driving a car, having a residence, owning possessions, or having them on his person or in his control. (*Ibid.*) The condition thus also meets the second *Lent* prong.

But satisfying two of the three prongs is not enough. The warrantless search condition is not invalid under *Lent* unless it satisfies all three prongs. And to satisfy the third prong, the condition must require or forbid "conduct which is not reasonably related to future criminality." (*Lent, supra,* 15 Cal.3d at p. 486.)

Respondent argues Guillen cannot show the warrantless search condition satisfies the third prong because the condition facilitates the probation department's ability to conduct effective supervision of Guillen during his 36 months of probation and makes it easier for law enforcement to ensure Guillen is obeying all laws, which is another condition of his probation. This argument does not carry the day.

In *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*), the California Supreme Court made clear that not every probation condition that might help enhance the effective supervision of a probationer will pass muster under the third prong of *Lent*.

6

"'Not every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can be considered reasonable' under *Lent*." (*Id.* at p. 1127.) The Supreme Court noted that approving any condition that facilitates probation supervision "would effectively eliminate the reasonableness requirement in *Lent*'s third prong, for almost any condition can be described as 'enhancing the effective supervision of a probationer.'" (*Ibid.*) The Supreme Court explained: "*Lent*'s requirement that a probation condition must be '"reasonably related to future criminality"' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.)

Although the probation condition at issue in *Ricardo P.* was a search condition allowing warrantless search of all the defendant's electronic devices, the court did not so limit its holding. Rather, *Ricardo P.* made clear that any warrantless search condition, such as that imposed on Guillen, is subject to the balancing test: "The Attorney General also argues that invalidating the electronics search condition here would make it impossible for courts to impose 'common' and 'standard search conditions,' such as those permitting warrantless searches of a [probationer's] person, property, and residence. But a property or residence search condition is likewise subject to *Lent*'s three-part test. Under the rule we set forth today, a . . . court imposing such a condition must consider whether, in light of 'the facts and circumstances in each case' [citation], the burdens imposed by the condition are proportional to achieving some legitimate end of probation." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1127.)

The Supreme Court also rejected the notion that warrantless search conditions are necessarily permissible because they help deter or prevent future criminal conduct: "If we were to hold that any search condition facilitating supervision of probationers is 'reasonably related to future criminality,' we might be obligated to uphold under *Lent* a condition mandating that probationers wear 24-hour body cameras or permit a probation officer to accompany them at all times. Such conditions would enhance

7

supervision of probationers and ensure their compliance with other terms of probation. But they would not be reasonable because the burden on the probationer would be disproportionate to the legitimate interest in effective supervision." (*Ricardo P., supra,* 7 Cal. 5th at p. 1125.)

The question before us, then, is whether the warrantless search condition imposed on Guillen is proportional to achieving some legitimate end of probation in light of the particular facts and circumstances of Guillen's case. As explained above, the crime of which Guillen was convicted does not, by itself, support a warrantless search condition. Simply being somewhere he was not permitted to be does not justify what is unquestionably a severely intrusive warrantless search probation condition. Nor is there anything about Guillen's conduct prior to the events in question that would suggest a warrantless search condition is justifiable; Guillen had no prior arrests or convictions. Thus, there was nothing about his conduct prior to the incidents at issue that would suggest a warrantless search condition was reasonably necessary to prevent or deter Guillen from future criminal conduct.

But that does not end our inquiry. For sentencing purposes, a court also may consider "conduct underlying a charge of which the defendant was acquitted." (*People v. Towne* (2008) 44 Cal.4th 63, 86.)[2] "[A]n acquittal merely establishes the existence of a reasonable doubt as to guilt. Unless specific findings are made, 'the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict . . . .' [Citation.] Facts relevant to sentencing need be proved only by a preponderance of the evidence, and '"an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action

---

[2] Imposing conditions of probation is part of the sentencing process. (*People v. Beagle* (2004) 125 Cal.App.4th 415, 417–418, 421.)

governed by a lower standard of proof."'" (*Ibid.*) "A jury's finding that the prosecution has not proved a given fact beyond a reasonable doubt is not inconsistent with the trial court's finding that the prosecution did prove the same fact by a preponderance of the evidence." (*People v. Carter* (2019) 34 Cal.App.5th 831, 845; see *United States v. Sweig* (2d Cir. 1972) 454 F.2d 181, 184 [the sentencing judge may rely on "evidence introduced with respect to crimes of which [the] defendant was acquitted" because acquittal does not conclusively establish the untruth of the evidence introduced].)

Although Guillen was not convicted of any possessory or weapon-related crime that might justify a warrantless search condition, he *was* charged with two firearm-related offenses. He was accused of committing an assault on ES with a firearm (count 8). He also was accused of exhibiting a deadly weapon other than a firearm in a rude, angry, and threatening manner in the presence of ES and of using the weapon in a fight and quarrel (count 9). The evidence presented on those counts could properly be considered by the trial court for the purpose of imposing conditions of probation and evaluating whether conditions were reasonably related to curbing future criminality.

"The trial court has broad discretion to fashion conditions of probation. [citation], and we review an imposed condition for abuse of discretion [citation]. '[A] reviewing court will disturb the trial court's decision to impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable.'" (*People v. Bryant, supra,* 11 Cal.5th at p. 984.) Because the trial court could consider the firearm charges brought against Guillen in imposing the conditions of his probation, we cannot say the court's decision to impose a warrantless search condition was arbitrary, capricious, and wholly unreasonable under the particular facts of Guillen's case. We therefore affirm the warrantless search condition.

9

## II.

### THE COURT DID NOT ERR BY IMPOSING A 10-YEAR STAY-AWAY ORDER UNDER PENAL CODE SECTION 136.2

Guillen argues the trial court erred by imposing a 10-year stay-away order under section 1203.097, subd.(a)(1). Guillen correctly argues a stay-away order issued under section 1203.097 may not exceed the three-year term of probation because any probation condition imposed pursuant to that statute terminates on the last day of probation. (*People v. White* (1982) 133 Cal.App.3d 677, 682–683.) In support of his argument that the 10-year stay-away order entered against him was imposed under section 1203.097, Guillen points to the Protective Order that was issued after the sentencing hearing at which the court imposed the sentence. It is a form document that offers a choice of boxes to be checked to indicate under which statute the order was issued: sections 136.2, 273.5, 368, 646.9, or 1203.097. The box checked on Guillen's Protective Order shows the stay-away order was issued as a probation condition order under section 1203.097. That checkmark, however, is plainly a clerical error.

During the sentencing hearing, the trial court recited the language of section 136.2 in imposing the stay-away term. Consistent with the court's oral pronouncement, the court's sentencing minute order specifies the 10-year stay-away order was issued pursuant to section 136.2. Pursuant to section 136.2, subdivision (i)(1), "[w]hen a criminal defendant has been convicted of a crime involving domestic violence . . . the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime. The order may be valid for up to 10 years, as determined by the court. This protective order may be issued by the court regardless of whether . . . the defendant is placed on probation." (*Ibid.*)

We conclude the trial court had the power to impose the 10-year stay-away order under section 136.2 and that it did so.

## DISPOSITION

The judgment is affirmed.  The matter is remanded, and the trial court is instructed to correct, nunc pro tunc, the clerical error on the Protective Order to accurately identify section 136.2 as the statutory basis for the court's 10-year stay-away order.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.