Filed 10/25/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E075886 |
| v. | (Super.Ct.No. RIF089248) |
| SHERWOOD DON JENKINS, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Reversed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

In 2002, a jury convicted Sherwood Don Jenkins of the second degree murder and kidnapping of Phillip Reeves. (Pen. Code, §§ 187, 207; unlabeled statutory citations refer to this code.) In 2019, Jenkins filed a petition to vacate his murder conviction under

1

section 1170.95, and the trial court denied the petition without issuing an order to show cause.

Jenkins argues that the court erred because it engaged in improper factfinding at the prima facie review stage, and the record of conviction does not refute the allegations of his petition. The People concede that the court erred by failing to issue an order to show cause, and we agree. Accordingly, we reverse the order denying the petition, and we direct the trial court to issue an order to show cause under section 1170.95, subdivision (c).

In determining that the record of conviction does not refute the allegations of Jenkins's petition, we address three arguments for a contrary conclusion. First, the court that sentenced Jenkins implicitly found that he acted with intent to kill, and on Jenkins's direct appeal we determined that the sentencing judge's implied finding was supported by substantial evidence. We conclude that the implied finding does not, however, preclude relief under section 1170.95, because it was made by a preponderance of the evidence, not beyond a reasonable doubt.

Second, the jury that convicted Jenkins also found true a special circumstance under section 190.2 that requires intent to kill, but the sentencing court struck the special circumstance as legally invalid because the jury convicted Jenkins of only second degree murder. We conclude that because the special circumstance finding was stricken, it too does not preclude relief under section 1170.95. (*People v. Barboza* (2021) 68 Cal.App.5th 955, 965 (*Barboza*).)

Third, at Jenkins's trial, the jury instruction on the natural and probable consequences doctrine erroneously identified murder as the target offense, thereby requiring that in order to convict Jenkins of murder on a natural and probable consequences theory, the jury had to find that he directly aided and abetted murder. But a later paragraph of the same instruction told the jurors that they did not have to agree unanimously on the target offense that Jenkins aided and abetted. The jury therefore did not necessarily find that Jenkins directly aided and abetted murder, so again we are unable to conclude that the record of conviction refutes the allegations of his petition under section 1170.95.

BACKGROUND

I. *Summary of Facts in the Prior Opinion*

The following facts are drawn from our prior opinion in Jenkins's direct appeal (the 2004 opinion). (*People v. Conner et al.* (May 7, 2004, E033015) [nonpub. opn.].) In June 1999, Michael Conner and the murder victim, Reeves, got into a fight with two men. Conner fired a gun at the men and injured them. Several days later, law enforcement interviewed Reeves about the shooting.

In September 1999, Conner and Jenkins tracked down Reeves. Conner asked Reeves whether he had "'snitched'" on Conner, and Jenkins also questioned Reeves. Conner ordered Reeves "to start digging and find the gun," which Conner believed Reeves had given to the police. After Reeves failed to produce the gun, Conner and Jenkins took Reeves to a landfill, where Reeves attempted to flee. Conner chased and shot at Reeves; once he caught Reeves, he strangled Reeves over a 10-minute period.

3

Conner also struck Reeves in the head with a rock several times. Reeves died from multiple gunshot wounds and blunt force trauma to the head and neck.

Before they took Reeves to the landfill, Jenkins told Conner, "'[H]e's the only witness. You got to kill him.'" Two other associates were involved in the events, mostly as drivers. When Conner chased Reeves at the landfill, either Jenkins or one of the other associates laughed and said, "'[Y]ou better catch him, he [*sic*] getting away from you.'" After Conner, Jenkins, and their two associates left the landfill, Jenkins helped Conner set his clothes on fire. The police caught up to them, and Conner and Jenkins fled the scene.

II. *Procedural Background*

As relevant here, the second amended information charged Conner and Jenkins with the first degree murder and kidnapping of Reeves. In connection with the murder charges, the information specially alleged that Reeves "was a witness to a crime who was intentionally killed" to prevent his testimony in a criminal proceeding (the witness-killing special circumstance). (§ 190.2, subd. (a)(10).) The information also alleged that Conner personally and intentionally discharged a firearm and caused great bodily injury or death. (§ 12022.53, subd. (d).) As to Jenkins, the information alleged that a principal in the murder was armed with a firearm. (§ 12022, subd. (a)(1).)

In the People's closing argument, the prosecutor acknowledged that Jenkins "was not the one who killed [Reeves], based on the evidence." But the prosecutor argued that Jenkins was liable for murder under three possible theories: (1) first degree murder under the felony murder rule; (2) first or second degree murder under the natural and probable consequences doctrine; or (3) first or second degree murder as a direct aider and abettor.

4

The court instructed the jurors on the definition of murder, express malice (but not implied malice), and deliberate and premeditated murder. The court also instructed the jurors on the theories of murder liability on which the People relied—direct aiding and abetting, the natural and probable consequences doctrine, and first degree felony murder.

The court further instructed the jurors that if they found Jenkins guilty of first degree murder, they had to make a finding on the witness-killing special circumstance allegations. Regarding those allegations, the court instructed the jurors that if a defendant was not the actual killer, they could not find the special circumstance true as to that defendant unless they were "satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission" of first degree murder.

The jurors found Conner guilty of first degree murder and found Jenkins guilty of second degree murder. They also convicted both defendants of kidnapping and found the firearm enhancements true. And even though they did not find Jenkins guilty of first degree murder, the jurors returned a true finding on the witness-killing special circumstance alleged against him.

In January 2003, the trial court sentenced Jenkins to 15 years to life imprisonment on the murder count, an eight-year term on the kidnapping count, and a one-year term for the firearm enhancement. The court struck the witness-killing special circumstance finding because it was "not appropriate with a second-degree murder conviction." (See § 190.2, subd. (a) [fixing the penalty for first degree murder when one or more of the enumerated special circumstances is found true]; *People v. Friend* (2009) 47 Cal.4th 1,

5

71 ["[A] finding of guilt of first degree murder was a necessary precondition to the special circumstance finding"].)

III. *Jenkins's Direct Appeal*

Jenkins appealed from the judgment of conviction, raising two challenges. First, he argued that his convictions were not supported by sufficient evidence because there was no evidence corroborating the accomplice testimony against him. Second, he urged us to stay his sentence for kidnapping under section 654. We rejected both arguments and affirmed the judgment in May 2004.

In the section 654 discussion, we observed that the trial court had imposed multiple punishment on Jenkins "based upon its finding the kidnapping was for one purpose, and the murder was committed for another." We held that the court's finding of multiple criminal objectives was supported by substantial evidence, reasoning as follows: "[T]he evidence showed that Jenkins not only aided and abetted the kidnapping of [Reeves], but he also encouraged Conner to murder [Reeves]. When [Reeves] failed to produce the gun, Jenkins told Conner that [Reeves] had to be killed. When Conner and [Reeves] got back into Thompson's car, Jenkins said, '[H]e's the only witness. You got to kill him.' Because there is evidence to support the trial court's finding of multiple objectives, we must uphold the trial court's decision."

IV. *Jenkins's Petition for Resentencing Under Section 1170.95*

In January 2019, after enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), Jenkins filed a petition for resentencing under section 1170.95. He attested that (1) a charging document was filed against him that allowed the People to

proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) he was convicted at trial of second degree murder under the natural and probable consequences doctrine or the felony murder rule, and (3) he could not now be convicted of murder because of changes made to section 188 by Senate Bill 1437.

The People filed a response to the petition and argued primarily that Senate Bill 1437 was unconstitutional. They also argued that Jenkins was ineligible for relief because the 2004 opinion purportedly demonstrated that "he directly aided and abetted the killing with intent to kill." In particular, the People relied on the section 654 discussion, in which we concluded that substantial evidence supported the trial court's implied finding that Jenkins harbored independent intents when he directly aided and abetted the kidnapping and the murder. The People attached a copy of the 2004 opinion to their response. Jenkins's counsel filed a reply arguing that Senate Bill 1437 was constitutional.

The court stayed the proceedings on the petition pending a decision on the constitutionality of Senate Bill 1437 in *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*). After the *Lamoureux* court held that Senate Bill 1437 was constitutional (*id.* at p. 246), the trial court held a brief hearing at which it denied Jenkins's petition without issuing an order to show cause. Jenkins appeared through counsel. The People argued that the 2004 opinion found that Jenkins directly aided and abetted the murder, and they again cited the section 654 discussion. Defense counsel submitted on the briefs.

7

The court stated: "Matter summarily denied." The court did not explain the basis for its ruling.

DISCUSSION

Jenkins argues that his petition states a prima facie case for relief and that the record of conviction does not refute his prima facie showing. He argues that the court therefore erred by denying his petition without issuing an order to show cause. We agree.

I. *Murder Liability and Senate Bill 1437*

Murder is an unlawful killing "with malice aforethought." (§ 187, subd. (a).) Although malice is an element of murder, prior law permitted defendants who did not act with malice to be liable for murder under the natural and probable consequences doctrine. (*People v. Clements* (2021) 60 Cal.App.5th 597, 610, review granted Apr. 28, 2021, S267624.) Specifically, an aider and abettor of a nonhomicide target offense could be liable for murder if the direct perpetrator of the target offense committed murder and the murder was a natural and probable consequence of the target offense. (*People v. Gentile* (2020) 10 Cal.5th 830, 845 (*Gentile*).) The doctrine thus allowed the accomplice "to be convicted of murder without personally possessing malice aforethought." (*Ibid.*)

Effective January 1, 2019, Senate Bill 1437 eliminated second degree murder liability under the natural and probable consequences doctrine.[1] (*Gentile, supra,* 10 Cal.5th at pp. 839, 841.) It did so by amending section 188. (*Gentile,* at p. 846.) As

---

[1] Senate Bill 1437 also changed the first degree felony murder rule by amending section 189 to impose new requirements for the rule's application. (*Gentile, supra,* 10 Cal.5th at p. 842.) The changes to the rule effected by Senate Bill 1437 are not relevant here, because the jury convicted Jenkins of second degree murder.

amended, section 188 states that except for first degree felony murder, "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The requirement that the principal act with malice is "incompatible" with the natural and probable consequences doctrine. (*Gentile*, at p. 847.)

Senate Bill 1437 did not change accomplice liability for murder under direct aiding and abetting principles. (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.) "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Id*. at p. 596.)

Under direct aiding and abetting principles, an accomplice is guilty of a murder perpetrated by another "if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.'" (*Gentile*, *supra*, 10 Cal. 5th at p. 843.) The direct aider and abettor of murder, like the direct perpetrator, must act with malice. (*Id.* at p. 844; accord *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [direct "aider and abettor must know and share the murderous intent of the actual perpetrator"].) "Malice can be express or implied. It is express when there is a manifest intent to kill." (*Gentile*, at p. 844, citing § 188, subd. (a)(1).)

II. *Section 1170.95*

Senate Bill 1437 added section 1170.95 so that defendants convicted of murder under prior law could seek retroactive application of amended sections 188 and 189. (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Subdivision (a) of section 1170.95

9

provides that any "person convicted of felony murder or murder under a natural and probable consequences theory may" petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if the following criteria are met: (1) "A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) "[t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder," and (3) "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)

Upon the filing of a facially sufficient petition, the trial court must (1) appoint counsel for the petitioner if requested, (2) permit the People to file a response and permit the petitioner to file a reply, and (3) determine whether the petitioner has made a prima facie showing of entitlement to relief. (§ 1170.95, subd. (c); *People v. Mancilla* (2021) 67 Cal.App.5th 854, 863.) In conducting the prima facie review, "'"the court takes [the] petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved."'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The court may consider the record of conviction, but it must not engage in factfinding, weigh the evidence, or reject the petition's allegations on the basis of adverse credibility determinations. (*Id.* at pp. 971-972, 974.) But if the record of conviction "'"contain[s] facts refuting the allegations made in the petition,"'" then the court is justified in rejecting them. (*Id.* at p. 971.)

"If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).) We independently review the trial court's ruling on whether the petitioner has made the requisite prima facie showing. (*People v. Garcia* (2020) 57 Cal.App.5th 100, 110, review granted Feb. 10, 2021, S265692.)

Once the order to show cause issues, the court "must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts.'" (*Lewis*, *supra*, 11 Cal.5th at p. 960, quoting § 1170.95, subd. (d)(1).) At that hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . . The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

III. *Jenkins's Section 1170.95 Petition*

By denying Jenkins's petition without issuing an order to show cause, the court implicitly determined that Jenkins had not made a prima facie showing of entitlement to relief. We agree with Jenkins that the court's ruling was erroneous and must be reversed.

Jenkins's petition contains the required factual allegations. He alleges that the charging document allowed the People to proceed against him under the felony murder rule or the natural and probable consequences doctrine, he was convicted of second degree murder following a trial, and he could not now be convicted of murder because of changes to section 188. The court had to assume the truth of those allegations, unless the record of conviction contains facts refuting them. The jurors necessarily rejected the first

11

degree felony murder theory when they convicted Jenkins of only second degree murder, but the record does not exclude the possibility that they convicted him under the natural and probable consequences theory, which is no longer a valid theory because of changes to section 188. The court therefore erred by denying Jenkins's petition at the prima facie review stage.

The basis for the court's ruling is unclear, but to the extent that the court relied on the sentencing court's section 654 ruling, that ruling does not refute Jenkins's allegations. "Section 654 precludes multiple punishment where an act or course of conduct violates more than one criminal statute but a defendant has *only* a single intent and objective. [Citation.] In such circumstances, the court must impose but stay execution of sentence on all of the convictions arising out of the course of conduct except for the offense with the longest sentence." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.) But "[i]f [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, [the defendant] may be punished for independent violations committed in pursuit of each objective." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.) The sentencing court applies the preponderance of the evidence standard when determining whether the defendant entertained multiple criminal intents and objectives. (*People v. Carter* (2019) 34 Cal.App.5th 831, 844-845 (*Carter*).)

Here, by declining to stay Jenkins's sentence on the kidnapping count, the sentencing court necessarily found that Jenkins "'formed a separate intent and objective for each offense.'" (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) Thus, the court implicitly found that Jenkins formed an intent to aid and abet murder—that is, an intent to

12

kill. (See *People v. Bradley* (2003) 111 Cal.App.4th 765, 770 [aider and abettor "must personally have had the objective of committing both the robbery and the attempted murder" to authorize unstayed sentences for both offenses].) And in our 2004 opinion, we held that the sentencing court's finding was supported by substantial evidence.

Even so, the sentencing court's finding does not preclude relief under section 1170.95. Ordinarily, a defendant is ineligible for relief if the trier of fact found beyond a reasonable doubt that the defendant intended to kill. Intent to kill constitutes express malice (§ 188, subd. (a)(1)), so the prior finding establishes that the defendant "act[ed] with malice aforethought" under amended section 188. (§ 188, subd. (a)(3); see also *People v. Allison* (2020) 55 Cal.App.5th 449, 460 [special circumstance findings that require the defendants to have intentionally killed bar relief under section 1170.95]; *People v. Bentley* (2020) 55 Cal.App.5th 150, 152, 154 [special circumstance finding under section 190.2, subdivision (a)(21), incorporated finding of intent to kill, rendering the defendant ineligible for relief under section 1170.95], review granted Dec. 16, 2020, S265455; *People v. Jones* (2020) 56 Cal.App.5th 474, 482 (*Jones*) [special circumstance finding under section 190.2, subdivision (d), barred the defendant from relief under section 1170.95, "because a jury has already found [him] to have satisfied the new definition of felony murder under amended section 189"], review granted Jan. 27, 2021, S265854.) Such a prior finding therefore establishes that the defendant could still be convicted of murder after Senate Bill 1437.

But prior findings by the sentencing court under section 654 do not have the same preclusive effect in this context. Unlike the jury's findings underlying the verdict, the

sentencing court's findings are made "under the lower standard of preponderance of the evidence." (*Carter, supra*, 34 Cal.App.5th at p. 844.) Findings by a preponderance of the evidence do not establish that the defendant could be convicted of anything, because conviction requires proof beyond a reasonable doubt. (See *People v. Aranda* (2012) 55 Cal.4th 342, 356 ["[T]he prosecution must prove a defendant's guilt of a criminal offense beyond a reasonable doubt . . ."]; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1007 ["[I]n criminal cases . . . the prosecution's burden of proving a defendant's guilt beyond a reasonable doubt affects how an appellate court reviews the record for substantial evidence"].) Consequently, the sentencing court's implicit finding that Jenkins formed an intent to kill does not establish that Jenkins could be convicted of murder after Senate Bill 1437, and the finding does not refute his allegation of eligibility.

While the trial court had only the 2004 opinion before it, other pertinent portions of the record of conviction (the charging document, verdict forms, closing arguments, and jury instructions) are before this court. The facts in the more comprehensive record do not refute Jenkins's allegation of eligibility for relief, so we cannot affirm the court's order as correct on another ground disclosed by the record. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [a correct ruling ""will not be disturbed on appeal merely because given for a wrong reason"""].)

Still, two aspects of the record merit discussion, even if they do not refute the allegations of the petition: (1) the witness-killing special circumstance finding, and (2) the court's instruction on the natural and probable consequences doctrine.

14

First, the witness-killing special circumstance required the jury to find beyond a reasonable doubt that Jenkins acted with intent to kill. (§§ 190.2, subds. (a)(10), (c), 190.4, subd. (a); *People v. Pearson* (2012) 53 Cal.4th 306, 322.) As already discussed, that prior finding of intent to kill would ordinarily render a defendant ineligible for relief under section 1170.95. But here, the court struck the special circumstance finding at sentencing. The finding therefore was not incorporated into the judgment, and Jenkins had no opportunity to challenge that finding of intent to kill. (See *Jones*, *supra*, 56 Cal.App.5th at p. 483 [special circumstance finding precluding relief under section 1170.95 could be challenged by filing a habeas petition].) Under these circumstances, we decline to give the stricken special circumstance finding preclusive effect at the prima facie review stage, and we conclude that it does not refute Jenkins's allegation that he is eligible for relief. (*Barboza*, *supra*, 68 Cal.App.5th at p. 965 [stricken special circumstance finding that required the jury to find intent to kill was a "nullit[y]" and did not "foreclose the possibility of relief under section 1170.95"].)

Second, the court's instruction on the natural and probable consequences doctrine contained an error under then-existing law, but the instruction as a whole still permitted the jury to find Jenkins guilty under the theory. The erroneous portion of the instruction incorrectly identified the target and nontarget offenses. Specifically, it stated that to convict Jenkins of murder under the doctrine, the jurors had to find: "1. The crime of murder was committed; [¶] 2. That the defendant aided and abetted that crime; [¶] 3. That a co-principal in that crime committed the crime of kidnapping or felony false imprisonment; and [¶] 4. The crime of murder was a natural and probable consequence of

15

the commission of the crime of kidnapping or felony false imprisonment." The first element should have identified the target offense as kidnapping or felony false imprisonment, not murder. Once the first element misidentified the target offense as murder, the second element had the effect of requiring the jurors to find that Jenkins directly aided and abetted murder.

The next paragraph of the instruction, however, contradicted that requirement by telling the jury the following: "You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of murder was a natural and probable consequence of the commission of that target crime." This portion of the instruction told the jurors that they did not have to agree on the identity of the particular target offense Jenkins aided and abetted, so long as they agreed that he aided and abetted a target offense of which murder was a natural and probable consequence.

If the instruction had omitted that additional paragraph, we might have been forced to conclude that the jury necessarily found Jenkins aided and abetted murder, under either the erroneous natural and probable consequences instruction or the direct aiding and abetting instruction. But the instruction given does not permit that conclusion. The jurors could have followed the portion of the instruction that removed the (erroneous) requirement that, in order to convict on a natural and probable consequence theory, they had to agree that Jenkins aided and abetted murder. Consequently, the

16

instruction does not show that Jenkins was convicted on a theory that remains valid after enactment of Senate Bill 1437.

In sum, the People prosecuted Jenkins under several theories of accomplice liability for murder, and the jurors convicted him of second degree murder. The jurors could have relied on direct aiding and abetting principles or the natural and probable consequences doctrine, and the record of conviction does not exclude the possibility that they relied on natural and probable consequences. We conclude that Jenkins's petition states a prima facie case for relief and that the record does not refute his allegations of eligibility. Accordingly, the trial court erred by denying the petition without issuing an order to show cause.

DISPOSITION

The order denying Jenkins's section 1170.95 petition is reversed. On remand, the trial court shall issue an order to show cause under section 1170.95, subdivision (c).

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

SLOUGH
J.

17